UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                       Case No. 6:19-cr-134-Orl-40EJK

**BARRY CLINT WRIGHT,**

    Defendant.
_____ /

### SENTENCING MEMORANDUM FOR BARRY CLINT WRIGHT

Defendant Barry Clint Wright, through his undersigned attorney, pursuant to 18 U.S.C. §§ 3551 and 3553, requests that he be placed on probation with a period of home detention and community service, which is a reasonable sentence that is not greater than necessary to satisfy the statutory purposes of sentencing.

    **I.**     **Given the nature and circumstances of Mr. Wright's offense and his history and characteristics, a probationary sentence is a sufficient sentence, but one not greater than necessary, to satisfy the purposes of sentencing and fulfill the intentions of Congress.**

The loss of human life is always tragic; the shame, guilt, and remorse that Mr. Wright feels will always remain with him. As noted in his letter to the Court, Mr. Wright stated

> The remorse I feel for the pain my actions has caused cannot be adequately expressed in words…I feel terrible and sad and I think about it every day…This weighs on my conscience daily.[1]

Federal felonies are, by definition, serious offenses. However, Mr. Wright's two felonies (count 2, Introduction of a New Drug in Interstate Commerce with Intent to Defraud or Mislead and count 3, Introduction of Misbranded Drug in Interstate Commerce with Intent to Defraud or

---

[1] Appendix I. Please note all records in appendix have been bookmarked for easy reference

1

Mislead) are Class E felonies. Class E felonies are the lowest tier of felony and no elements of drugs, guns, or violence were present. While Mr. Wright's motive *was* personal benefit, it was not to make himself rich. "The defendant's motive for committing the offense is one important factor [in sentencing],"[2] and Mr. Wright's motive was due to financial hardships. *See* Final Presentence Investigation Report ("PSR") at ¶ 47. Mr. Wright did not use his money lavishly; instead, he provided financial support to his mother and stepfather and paid bills. He will have nothing to show for his misconduct but two felony convictions and a misdemeanor conviction.

Mr. Wright promptly cooperated fully with the government and will continue to make himself available should the government choose to vet and investigate the information Mr. Wright has provided. Mr. Wright sat down with agents from the Food and Drug Administration and provided truthful, complete information. Mr. Wright provided law enforcement unfettered access to his emails and financial records. Subsequent to his proffer, Mr. Wright made several inquiries to the prosecutor through his attorney and offered to provide more information or clarifying information. Those were the acts of someone with a contrite heart. Mr. Wright's cooperation reflects a reduced likelihood of recidivism and is a beneficial part of his history and character supporting a non-guideline, non-incarcerative sentence under § 3553(a)(2)(C). Though his cooperation has not been recognized by the government, the Court should consider it in its 3553(a) analysis.

Mr. Wright's increased familial responsibilities shows the depth of his character. Even though Mr. Wright never had a meaningful relationship with his biological father, he has sole custody of his 11-year old son and is an excellent father to him. He is a single father and sole caretaker of H.W. When H.W.'s mother left the family in 2010, it affected both Mr. Wright and

---

[2] *See Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993).

H.W. greatly. H.W.'s mother assumes a passive role part in H.W.'s life as she only really sees H.W. when Mr. Wright drives him over to her residence or he makes the efforts for her to be involved. As noted in the PSR, she does not pay child support. PSR at ¶ 90. His son suffers from ADHD and receives medication for it.[3]

Mr. Wright has also always been attentive to his mother and stepfather. Mr. Wright's stepfather who raised him has terminal (stage 4 cancer) and Mr. Wright helps by taking him to treatment.

Mr. Wright's offenses are undeniably serious, and should not be excused, but his history and characteristics as well as his cooperation and extreme remorse mitigate the seriousness of the offense.

**II.    Regarding 18 U.S.C. § 3553(a)(2)(A), the need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide just punishment is satisfied by a probationary sentence.**

Because of the instant case, Mr. Wright is a convicted felon who has suffered and will continue to suffer significant punishment. The biggest form of punishment will arguably be the convicted felon status and consequent collateral consequences that Mr. Wright will now have for the rest of his life. A recent congressional report authored by the United States Government Accountability Office (GAO) demonstrates that there are 641 collateral consequences of a nonviolent felony conviction. *See* GAO Report 17-691, *Stakeholders Views on Potential, Actions to Address Collateral Consequences*, (Sept. 2017), available at https://www.gao.gov/assets/690/687004.pdf. Of these 641 collateral consequences, 497 (78%) of them may last a lifetime. *See id*. As former President Bush recognized when he commuted Lewis Libby's perjury and obstruction sentence (from 30 months to probation), "the

---

[3] Redacted records of H.W. provided at Appendix III.

consequences of his felony conviction . . . will be long-lasting" and "harsh."[4]

In an opinion from the Eastern District of New York, Judge Fredrick Block concluded that "sufficient attention has not been paid at sentencing . . . to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence." *United States v. Nesbeth*, Case No. 1:15-cr-00018, 2016 WL 3022073, at *1 (E.D.N.Y May 24, 2016)(varying downward from guideline range of 33 to 44 months imprisonment to one-year of probation for a drug defendant based in part on the number of statutory and regulatory consequences she faced as a convicted felon). In granting a variance in *Nesbeth*, the court asserted that the collateral effects of a criminal conviction can be "devastating" to a defendant. *Nesbeth*, 2016 WL 3022073, at *1. Indeed, [m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us.' *Id*. (citing Michelle Alexander, *The New Jim Crow* (2010)). As Judge Block concluded, "[t]oday, the collateral consequences of criminal convictions form a new civil death." *Id*. at *3. *See also United States v. Gardellini*, 545 F.3d 1089 (DC Cir. 2008)(upholding non-guidelines sentence of probation and a fine for defendant convicted of filing false tax returns where guidelines range was 10-16 months because defendant had accepted responsibility, a minimal risk of recidivism, had already suffered substantially and been treated for stress, and the only real deterrent in these cases are the efforts of prosecutors to enforce the laws, not harsh prison sentences).

---

[4] *See* White House Office of the Press Secretary, "Statement by the President on Executive Clemency for Lewis Libby," July 2, 2007 (**http://georgewbushwhitehouse.archives.gov/news/releases/2007/07/20070702-3.html**) (regarding *United States v. Libby*, Dist. Ct. No. 1:05-CR-00394-RBW-1 (D. D.C. 2007)).

As *Nesbeth* establishes, the civil death that Mr. Wright faces as a result of his felony record constitutes significant punishment.

For all these reasons, counsel submits that a probationary sentence is appropriate.

### III. Regarding 18 U.S.C. § 3553(a)(2)(B), a probationary sentence with added conditions of home detention and community service is a strong deterrence for Mr. Wright and likewise, a strong general deterrence for others.

The empirical evidence is nearly unanimous that there is no established relationship between the length of a term of incarceration and either general or specific deterrence, regardless of the type of crime committed. The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004) ["*Measuring Recidivism*"].[5]

Recidivism rates are influenced most by a defendant's personal characteristics, such as:

(1) family ties and marital status;

(2) level of education;

(3) a lack of substance abuse; and

(4) a history of stable employment.[6]

---

[5] *See* United States Sentencing Commission. *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, May 2004, Release 1 at 15. *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

[6] Measuring Recidivism at 12-13.

Mr. Wright presents long histories of employment and strong family ties, while furthering his education and not abusing drugs. Thus, to the extent it possibly can, the probationary sentence requested by Mr. Wright will address the need for adequate deterrence called for in 18 U.S.C. § 3553(a)(2)(B).

### IV. Regarding 18 U.S.C. § 3553(a)(2)(C), the need to protect the public is addressed through a probationary sentence.

Mr. Wright's conduct while on pre-trial release should assuage the Court of any concerns for society's protection from him. As noted in the PSR, he has been on supervised pre-trial release since June 12, 2019. *See* Release Status, page 1 and ¶ 10. During that time, Chris Barber in North Carolina office has supervised him with no issues. Further, Mr. Wright poses an exceptionally low risk of recidivism. Mr. Wright is a non-violent offender with some college education, in a committed relationship (almost four years), a single father to a minor child, and has been employed throughout his life. The PSR notes his employment with Synchrony Financial located in Charlotte, NC since 2010. PSR at ¶ 101. As reflected in the Appendix, employment records show a start date of 2010 and his most recent job performance review from 2019 shows stellar performance. *See* Appendix II. It is unknown but doubtful whether he will be allowed to continue working in this capacity so Mr. Wright has started looking and applying for other jobs that he will be eligible for as a convicted felon. For example, Amazon Mechanical Turks provides jobs for felons. *See Id.* Mr. Wright's aunt, Janet Hill, has also written a letter to the Court expressing her desire to help him with employment should he need it. *See Id.*

Mr. Wright – as seen in the letters submitted – has very close family ties. *See* Appendix I. In short, Mr. Wright's familial responsibility, stable residency and stable employment, as well as the probationary supervision support the conclusion that he is unlikely to re-offend, and thus the public would be sufficiently protected by a non-incarcerative sentence.

### V. Regarding 18 U.S.C. § 3553(a)(2)(D), the need to provide Mr. Wright with needed medical care in the most effective manner is accomplished with a probationary sentence.

Mr. Wright's prescription cost for 2019 for a medication that he needs to stay alive is included in the PSR at pages 40-41. As seen, Mr. Wright's insurance paid $46,875.68. Doc. 40 at 41. In a November 2005 audit report by the Office of the Inspector General, it found

> Treating inmates who test positive for Human Immunodeficiency Virus (HIV) and inmates requiring psychiatric care account for a significant portion of the BOP's total prescription medication costs. While the BOP reported that 1,677 inmates (or 1 percent) are HIV-positive, including 639 inmates with Acquired Immunodeficiency Syndrome (AIDS), the cost of prescription medications to treat HIV-positive inmates comprised 23 percent of the BOP prescription medication costs in FY 2004. Additionally, the cost of HIV prescription medications increased by 14 percent from FY 2003 to FY 2004, while the HIV positive inmate population increased by only 5 percent[…]In FY 2004, $23.49 million of the $50.73 million in total BOP prescription medication costs were related to HIV and psychiatric medications[…]

Audit of the Federal Bureau of Prisons Pharmacy Services *attached as* Appendix IV. A prison sentence will punish Mr. Wright too harshly given the offense, endanger Mr. Wright in prison, waste money, and further burden the United States' government and society by consuming valuable resources while confining a devoted single father and nonviolent offender. The Court should avoid these negative and preventable consequences by sentencing Mr. Wright to a probationary sentence, which will have the positive and achievable consequence of punishing Mr. Wright sufficiently while also monitoring his behavior and overseeing his medical treatment. Such a sentence will also utilize scarce government resources more efficiently and avoid the further overcrowding of our nation's prisons.

### VI. The Kinds of Sentences Available (18 U.S.C. 3553(a)(3))

The sentencing statute requires the Court to consider "the kinds of sentences available."

18 USC § 3553(a)(3). Congress has recognized "the general appropriateness of imposing a sentence other than imprisonment" for first offenders not convicted of violence or similarly serious offenses.[7] Congress does not require imprisonment for Mr. Wright's Class E felony (that statutory range is 0-5 years). In other words, the statutes of conviction do not set a mandatory minimum term of imprisonment; therefore, the Court is free to impose a sentence that involves no imprisonment, making the requested sentence of probation within keeping with the kinds of sentences available.

## VII.   The Need to Provide Restitution to Any Victims of the Offense

As noted by the PSR, Mr. Wright may have to pay restitution in this case. (*See* ¶¶ 120-121). Accordingly, a probationary sentence will allow him to continue working and pay restitution in this case.  As of January 29, 2020, the government has not received any restitution requests.

## CONCLUSION

WHEREFORE, Mr. Wright respectfully requests this Honorable Court to a term of probation, which is a reasonable sentence that is no greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553. A term of imprisonment—as that advocated for by the government at Doc. 37 notwithstanding Mr. Wright's negligible criminal history, immediate cooperation, and plea agreement—would only further the sentencing goal of incapacitation with no purpose other than retribution. Too harsh a sentence fails to respect the law just as much as too lenient a sentence,[8] and it violates the statute requiring this sentence to be no greater than necessary.

---

[7] 28 U.S.C. § 994(j).

[8] *See* Associate Justice Anthony M. Kennedy, Speech at the American Bar Association Annual Meeting, at 4 (Aug. 9, 2003), available at http://www.supremecourtus.gov/public

---

info/speeches/sp_08-09-03.html ("Our resources are misspent, our punishments too severe, our sentences too long.")

## CERTIFCATE OF SERVICE

I Hereby Certify that undersigned electronically filed the foregoing *Sentencing Memorandum for Barry Clint Wright* with the Clerk of Court (CM/ECF) by using the CM/ECF system, which will send a notice of electronic filing to Chauncey Bratt, Assistant United States Attorney, this the 29th day of January 2020.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

*s/Karla M. Reyes*
Karla M. Reyes
Assistant Federal Defender
Florida Bar No.0072652
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: karla_reyes@fd.org
Attorney for Mr. Wright